IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| MARKET SQUARE HOSPITALITY, LLC, ) | Case No. 17-22394 |
| ) | |
| ) | Hon. Janet S. Baer |
| ) | |
| Debtor. ) | |

**EIGHTH INTERIM ORDER AUTHORIZING DEBTOR TO USE
PREPETITION COLLATERAL, INCLUDING CASH COLLATERAL, AND
GRANTING ADEQUATE PROTECTION PURSUANT TO
<u>11 U.S.C. §§ 361 AND 363 AND SCHEDULING A FINAL HEARING</u>**

This matter comes before the Court upon the motion (the "<u>Motion</u>") (ECF No. 10)[1] of Market Square Hospitality, LLC (the "<u>Debtor</u>"), pursuant to sections 361 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "<u>Local Rules</u>"), for the entry of an order (the "<u>Eighth Interim Order</u>") authorizing Debtor to use cash collateral of Thomas Olson, successor-in-interest to St. Charles Bank & Trust ("<u>Olson</u>") and the U.S. Small Business Administration ("<u>SBA</u>" and together with Olson, the "<u>Lenders</u>") and providing adequate protection to Olson; the Court having determined that the relief requested in the Motion, as modified herein, is in the best interests of Debtor, its estate, its creditors, and other parties-in-interest; and it appearing that notice of the Motion and the interim hearings on the Motion were sufficient and adequate under the particular circumstances; and upon the record in this case; and after due deliberation thereon and good and sufficient cause appearing therefore;

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

**DEBTOR AND OLSON REPRESENT TO THE COURT AS FOLLOWS:**

1. **Prepetition Loans and Liens**. Debtor and Olson stipulate as follows:

(a) Prior to the Petition Date, Debtor and St. Charles Bank & Trust Company ("St. Charles") entered into that certain Loan and Security Agreement dated August 1, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"). Pursuant to the terms of the Loan Agreement, St. Charles made loans and other financial accommodations to Debtor as evidenced by that certain Promissory Note dated August 1, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Note").

(b) Debtor and St. Charles entered into that certain Mortgage, Security Agreement with Assignment of Rents and Fixture Filing dated as of August 1, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "Mortgage") whereby the Debtor granted St. Charles a security interest in certain collateral, more fully described in the Mortgage, including but not limited to, certain real property located at Sheridan Road and 28th Street, Zion, Lake County, Illinois ("Mortgaged Premises"). Debtor and St. Charles also entered into that certain Assignment of Rents and Leases dated as of August 1, 2012 (as amended, restated, supplemented or otherwise modified from time to time, the "AOR") whereby the Debtor granted St. Charles a security interest in certain collateral, more fully described in the AOR, including but not limited to, rents from the Mortgage Premises.

(c) The Debtor also executed (i) that certain Assignment of Hotel Operating & Management Agreement dated as of August 1, 2012 in favor of St. Charles, (ii) that certain Assignment of Hotel License Agreement dated as of August 1, 2012 in favor of St. Charles, (iii) that certain Assignment of Guest Room Reservation Agreement dated as of August 1, 2012 in

2

favor of St. Charles, (iv) that certain Assignment of Retail Management Agreement dated as of August 1, 2012 in favor of St. Charles, and (v) that certain Assignment of Plans, Specifications, Construction and Service Contracts, Licenses and Permits dated as of August 29, 2012 in favor of St. Charles (collectively, the "Additional Assignments").

(d) St. Charles and the SBA also entered into a subordination agreement pursuant to which the SBA's indebtedness, liens, rights and remedies were subordinated to St. Charles' indebtedness, liens, rights, and remedies.

(e) St. Charles, on the one side, and David Delach and Richard Delisle ("Guarantors"), on the other side, entered into a Guaranty of Payment dated August 1, 2012 (the "Guaranty") pursuant to which the Guarantors guaranteed the punctual payment and performance when due of the Debtor's obligations under the Pre-Petition Loan Documents (defined below).

(f) St. Charles and Olson entered into a purchase and sale agreement dated as of August 1, 2012 which sale closed on or about June 27, 2017, pursuant to which Olson purchased the Prepetition Loan Documents (defined below) from St. Charles and, therefore, became successor-in-interest to St. Charles' interest in and to the Prepetition Loan Documents.

(g) As of the Petition Date, Debtor was indebted and liable to Olson under the Loan Agreement, Note, Mortgage, AOR, Additional Assignments, and all documents, instruments, and agreements related to or entered into in connection with the foregoing (collectively, the "Prepetition Loan Documents") in the aggregate principal amount of at least $6,191,958.16, plus interest, fees, costs, expenses (including attorneys' fees), and other amounts that Debtor is obligated to pay Olson under the Prepetition Loan Documents (the "Prepetition Loan Debt").

3

(h) The Prepetition Loan Debt is (A) legal, valid, binding, and enforceable against Debtor and (B) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise.

(i) As security for the payment of the Prepetition Loan Debt, Debtor granted St. Charles security interests in and liens upon, or assigned to St. Charles, as the case may be: (i) the Mortgaged Premises, (ii) the collateral described in paragraphs (a)-(i) on pages 2-3 of the Mortgage, (iii) the Collateral (as defined in the Loan Agreement), (iv) the Collateral (as defined in the Loan Agreement), (v) the collateral described in the AOR, (vi) the property described in the Additional Assignments, and (vi) all or substantially all of Debtor's tangible and intangible personal property and assets, wherever located and whether then owned or thereafter arising or acquired by Debtor, including, without limitation, all of Debtor's accounts, inventory, equipment, software, books and records, securities, chattel paper, deposit accounts, documents, financial assets, general intangibles, goods, instruments, intellectual property, investment property, letter-of-credit rights and commercial tort claims, all as more fully described in the Prepetition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all proceeds thereof, including, without limitation, the Cash Collateral (as defined below), being referred to herein as, the "Prepetition Collateral" and such liens and assignments thereon shall be referred to as, the "Prepetition Liens"), pursuant to, among other things, the Prepetition Loan Documents.

(j) The Prepetition Liens are legal, valid, enforceable, non-avoidable, and duly and properly perfected security interests in and liens upon the Prepetition Collateral.

4

(k)     As of the Petition Date and without giving effect to this Eighth Interim Order, the Debtor is not aware of any liens or security interests having priority over the Prepetition Liens, except certain "Permitted Exceptions" (as defined in the Mortgage).

(l)     The Prepetition Liens on the Prepetition Collateral were granted to St. Charles for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

(m)     Olson's interest in the Collateral is not currently adequately protected prior to the entry of a final order granting adequate protection.

(n)     The ability of the Debtor to finance its operations and complete a successful chapter 11 reorganization requires immediate and continued use of Cash Collateral. In the absence of the use of Cash Collateral, the continued operation of the Debtor's business would not be possible and immediate and irreparable harm to the Debtor, its estate, and its creditors would occur. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course of business or to maintain its property without the use of Cash Collateral. The relief requested in the Motion is therefore necessary for the continued operation of the Debtor's business and the preservation of its property. Olson and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's consensual use of Cash Collateral to fund the continued operation of the Debtor's business during the Specified Period (as defined below) in accordance with the Budget (as defined below). Entry of this Eighth Interim Order is in the best interests of the Debtor, its estate, and its creditors.

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED THAT:**

1.     **Petition Date**. On July 27, 2017 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois (this "Case"). Debtor has retained possession of its

property and continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. **<u>Jurisdiction</u>**. This Court has core jurisdiction over this Case, the Motion, and the parties and property affected by this Eighth Interim Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. **<u>Motion and Objections</u>**. The Motion is granted on an Eighth interim basis and the Debtor's use of Cash Collateral on an interim basis is authorized, subject to the express terms and condition of this Eighth Interim Order. All objections to the entry of this Eighth Interim Order, if any, are resolved hereby or, to the extent not resolved, are overruled.

4. **<u>Cash Collateral</u>**.

(a) All cash, cash proceeds, and all other cash collateral of Debtor wherever located and whether constituting original collateral or proceeds of the Prepetition Collateral, are encumbered by the Prepetition Liens and constitute "cash collateral" of Olson (as such term is defined in section 363(a) of the Bankruptcy Code) (all such cash, cash proceeds, and other "cash collateral", the "<u>Cash Collateral</u>" and together with the Prepetition Collateral, the "<u>Collateral</u>"). Without limiting the generality of the foregoing, the Cash Collateral shall include all of the cash proceeds of the Prepetition Collateral in which Lender has an interest, whether such interest existed as of the Petition Date or arises pursuant to this Eighth Interim Order, any other order of the Court, applicable law, or otherwise.

(b) Olson holds valid, duly perfected, first-priority liens upon and security interest in and to all of the cash of Debtor derived from the Prepetition Liens to the extent of his Prepetition Liens, whether obtained on, prior to, or after the Petition Date (which liens and security interests constitute and are included in the term "Prepetition Liens" as used herein).

5. **Authorized Use of Cash Collateral**.

(a) *Specified Period.* Subject to and solely in accordance with the express terms and conditions of this Eighth Interim Order, Debtor is hereby authorized, pursuant to sections 361 and 363 of the Bankruptcy Code, to use the Cash Collateral of Olson on an interim basis solely for the period (the "Specified Period") from the Petition Date through the earliest to occur of: (i) 5:00 p.m. Central Time on February 28, 2018; or (ii) the Termination Date (as defined below). The Debtor's authority to use the Cash Collateral shall terminate automatically upon the expiration of the Specified Period without further notice or order of this Court, unless otherwise extended or waived by Olson.

(b) *Use of Collateral.* Subject to and solely in accordance with the express terms and conditions of this Eighth Interim Order, the Cash Collateral may only be used by the Debtor in accordance with the budget (the "Budget") attached to this order as **Exhibit "A"**, plus a variation in the Budget not to exceed 10% ("Authorized Cash Collateral"). In addition, Debtor's use of the Authorized Cash Collateral may only be extended by express written consent of Olson or by order of the Court.

6. **Adequate Protection**. To protect Olson from any diminution in the value of the Prepetition Collateral that may occur through Debtor's use of the Prepetition Collateral during this case, Olson is entitled to receive adequate protection to the extent of any diminution in the value of his Prepetition Collateral results from Debtor's use of the Authorized Cash Collateral. The adequate protection provided herein and other benefits and privileges provided herein are consistent with and authorized by the Bankruptcy Code and are necessary to protect Olson from the diminution of its interests in the Collateral from and after the Petition Date. Accordingly, in

exchange for Debtor's use of the Authorized Cash Collateral, Olson shall receive adequate protection as follows:

(a) *Use*. Debtor shall use the Authorized Cash Collateral only in accordance with paragraph 5 above.

(b) *Adequate Protection Lien*. Olson shall receive (i) a replacement lien in the Prepetition Collateral and in the post-petition property of Debtor of the same nature and to the same extent and in the same priority it had in the Prepetition Collateral, and to the extent such liens and security interests extend to property pursuant to Section 552(b) of the Bankruptcy Code, and (ii) an additional continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interest in and lien on all cash or cash equivalents, whether now owned or in existence on the Petition Date or thereafter acquired or existing and wherever located, of Debtor (collectively, the "Adequate Protection Lien").  Except as expressly set forth in this Eighth Interim Order, the liens and security interests granted in this Eighth Interim Order shall not be: (i) subject to any lien which is avoided and preserved for the benefit of the Debtors' estate under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise.

(c) *Automatic Perfection*. The Adequate Protection Lien shall be deemed valid, binding, enforceable, and perfected upon entry of this Eighth Interim Order without the need to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien, or any similar document or the need to take any other action (including entering into a deposit control agreement and taking possession of any of the collateral subject to the Adequate Protection Lien) in order to validate the perfection of any of the Adequate Protection Liens.  If Olson shall, in his discretion, choose to file any such mortgages, deeds of trust, security deeds, or

UCC-1 financing statements, or take any other action (such as entering into a deposit control agreement) to validate the perfection of any part of the Adequate Protection Lien, Debtor and its officers are directed to execute any documents or instruments as Olson shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded as of the Petition Date. Olson may, in his discretion, file a certified copy of this Eighth Interim Order in any filing office in each jurisdiction in which a Debtor is organized or has or maintains any collateral or an office, and each filing office is directed to accept such certified copy of this Eighth Interim Order for filing and recording.

(d) *Superiority Claim*. Upon entry of this Eighth Interim Order, pursuant to Sections 503(b) and 507(b), Olson shall be deemed to have an allowed superpriority adequate protection claim to the extent the Adequate Protection Lien is not adequate to protect Olson against the diminution in value of the Prepetition Collateral (the "Superpriority Claim" together with the Adequate Protection Lien, the "Adequate Protection Obligations").

(e) *Priority*. Subject only to paragraph 10, Adequate Protection Obligations shall have priority over all liens and administrative expenses in this Case of the kind specified in or arising or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 552, 726 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment, or otherwise.

(f) *No Surcharge*. In the exercise of its business judgment, with respect to expenses or other liabilities incurred by Debtor from the Petition Date through the Termination Date, Debtor hereby agrees that there shall be no surcharge of the Prepetition Collateral for any purpose, unless agreed to by Olson, for the period of the Petition Date through the Termination Date. Further, Debtor believes and asserts that the Budget contains all expenses that are

9

reasonable and necessary for the operation of its businesses and the preservation of the Collateral from the Petition Date through the Termination Date and, therefore, includes all items potentially chargeable to Olson under section 506(c) of the Bankruptcy Code for such period. Accordingly, Debtor (and any subsequently appointed trustee) shall be deemed to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against Olson or the Collateral on account of expenses or other liabilities incurred by Debtor through the Termination Date.

(g) *Reservations*. Olson reserves the right to argue for and demand, and Debtor reserves its right to challenge Olson's arguments and demands, including requests for additional adequate protection for periods not covered by this Eighth Interim Order, including, without limitation, in connection with the Final Hearing and any Final Order (each as defined below).

7. **Termination of Use of Cash Collateral**. Notwithstanding anything to the contrary contained herein, Debtor's right to use the Cash Collateral shall expire on the earliest to occur of: (i) the expiration of the Specified Period; (ii) the conversion of any Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code; (iii) the appointment of a trustee or examiner or other representative with expanded powers for the Debtor; (iv) the occurrence of the effective date or consummation of a plan of reorganization, (v) Debtor's non-compliance with any term or provision of this Eighth Interim Order, or (vi) the filing of any adversary proceeding by the Debtor or any other party-in-interest against Olson, or an adversary proceeding challenging the validity, enforceability or priority of the Prepetition Liens,

Prepetition Loan Documents or Prepetition Loan Debt by any party in interest, against Olson for any reason (the first such occurrence being hereinafter referred to as the "Termination Event"). On and after the Termination Event, Olson may terminate any or all of Debtor's authority to use the Authorized Cash Collateral upon three (3) business days' notice to counsel to Debtor via e-mail (abrustein@dimontelaw.com; jsmolka@dimontelaw.com), with copies to counsel for the SBA and the U.S. Trustee (the last day of such three business day period, the "Termination Date"); provided, however, that the Debtor reserves the right to move the Bankruptcy Court to enter an order finding that a Termination Event did not occur.

8. **Financial Reporting and Compliance with Prepetition Loan Documents**. Debtor shall (i) furnish Olson with all financial data and documents required under the Prepetition Loan Documents, (ii) provide Olson with a weekly cash activity report reflecting actual income and actual expenses by close of business each Tuesday for the week prior, (iii) provide Olson with an actual-to-budget report by the 21st day after the end of each calendar month for the month prior; (iv) maintain and pay premiums for insurance to cover the Collateral from fire, theft, and water damage, and maintain the Collateral in good repair, (v) upon request, make available to Olson evidence of that which constitutes its Collateral or Cash Collateral, (vi) timely file with the Court all monthly operating reports required under chapter 11 of the Bankruptcy Code, (vii) upon notice and within normal business hours, permit Olson to inspect Debtor's books and records, and (viii) provide copies of all appraisals and valuations of the Collateral within two (2) business days of the Debtor's receipt of such documents.

9. **Modification of the Stay**. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as of the date hereof as necessary to effectuate all of the terms and provisions of this Eighth Interim Order, including, without limitation, to: (a) permit

Debtor to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit Debtor to perform such acts as Olson may request in its reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit Debtor to incur all liabilities and obligations to Olson under this Eighth Interim Order; (d) authorize Debtor to pay, and Olson to retain and apply, payments made in accordance with the terms of this Eighth Interim Order; and (e) permit Olson to deliver written notice of a Termination Event in accordance with paragraph 7 above.

10. **Carve-Out**.

(a) Except for the Authorized Cash Collateral, Olson is not consenting to and this Eighth Interim Order does not authorize any further carve-outs of Cash Collateral which can be used by the Debtor; provided that the Debtor is authorized to use Cash Collateral to pay the unpaid fees of the Clark of the Bankruptcy Court or District Court, as applicable, and of the United States Trustee pursuant to 28 U.S.C. § 1930(a).

(b) Except for the Authorized Cash Collateral, no costs or administrative expenses that have been or may be incurred in the Debtor's Chapter 11 case, in any conversion of the Debtor's chapter 11 cases pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other superpriority claims, are or will be prior to or on a parity with the claims of Olson against the Debtor arising, as applicable, out of the Adequate Protection Obligations or any provision of this Eighth Interim Order or with the Adequate Protection Lien granted herein on, in and to the Collateral.

11. **Effectiveness**. This Eighth Interim Order shall constitute findings of fact and conclusions of law and shall take effect upon the entry of a final order. The representations of

the Debtor and Olson set forth in this Eighth Interim Order are deemed to be stipulations effective immediately upon the entry hereof.

12.     **Interlocutory Order**. This is an interlocutory order. Nothing contained herein shall be deemed or construed to (a) limit Olson to the relief granted herein, (b) bar Olson from seeking other and further relief (including without limitation relief from the terms of this order) for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same, or (c) require Olson to make any further loans or advances to the Debtor. This Eighth Interim Order may be modified for cause shown by the Debtor, Olson or any other party-in-interest on due notice. No such modification, however, shall deprive Olson of his interest in Debtor's property (pre-petition and post-petition)

13.     **Reservation of Rights**.  The terms of this Eighth Interim Order shall not limit or preclude any grounds Olson may raise to oppose or challenge the terms of any subsequent order regarding the Debtor's use of the Cash Collateral. Except as specifically set forth in this Eighth Interim Order, neither the Debtor nor Olson shall be deemed to have suspended or waived any of its or their rights or remedies under this Eighth Interim Order.

14.     **Interim Hearing**. This matter will be set for status on a further interim hearing on February 27, 2018 at 10:00 a.m.

Dated:                                              **ENTERED:**

_____
**UNITED STATES BANKRUPTCY JUDGE**

13

# EXHIBIT A

| | **MONTHLY TOTAL** | **FEBRUARY 1 - 28** | |
|---|---|---|---|
| REVENUE | | **BUDGET** | **ACTUAL** |
| | HOTEL ROOMS | $68,089 | |
| | BANQUETT | $1,500 | |
| | CALLIES | $11,200 | |
| | RETAIL: (8 months of Vista Rent $71K-Pending) | $6,203 | |
| **TOTAL REVENUE** | | **$86,992** | **$0** |
| EXPENSES | | | |
| | Gordon Food - Callies | $2,000 | |
| | Aldis - Perrisables | $400 | |
| | banquette Food | $500 | |
| | Cincinatti - Prop Insurance | $3,028 | |
| | Real Estate Tax Pymt: PIN # 004 $51K - Dec 2017) | $0 | |
| | Wages | $27,000 | |
| | PTEB (Payroll Tax & Employee Benefit) | $11,000 | |
| | Hummana Health - Employee Insur | $2,965 | |
| | Aflac - Employee Insuraunce | $400 | |
| | AmTrust North America | $1,500 | |
| | North Shore Gas | $1,800 | |
| | Com Ed EL | $6,000 | |
| | City of Zion Water (March, June, Sept, Dec) | $0 | |
| | North Shore Sanitary (Quarterly: Jan, April, July, O | $0 | |
| | Bank Changes/Merchant Services | $1,800 | |
| | Bulk (Cable) TV | $1,481 | |
| | Computer Equipment Expense | $150 | |
| | Dues & Subscritions | $300 | |
| | Elevator and Alarm Monitoring - Ottis | $1,000 | |
| | Alarm Detection - Fire Pannel (Quartely: Oct, Jan, A | $0 | |
| | Santiro Communication - CO2 Dectors | $800 | |
| | Hanson Services - Copeir Maint | $310 | |
| | Dan Skarta - LLC Renewal Co LLC | $0 | |
| | DeLageLanden - Comp Projector TV | $180 | |
| | Equipment - Purchase - Dryer Motor | $0 | |
| | Guest SuppliesAmerican Hotel | $600 | |
| | Guest Supplies -HD Supply | $700 | |
| | Guest SuppliesD-Z-Textile | $1,600 | |
| | Hospitality Nights/Guest Reception | $125 | |
| | Lipke-Kentex: Combo Cleaning Supplies & Cleaning | $1,000 | |
| | Internet Fee/Comcast | $400 | |
| | Landscape & Snow | $600 | |
| | Linens - Rooms | $500 | |
| | Linens Banquet - Cleaning | $200 | |
| | Break Through Bev - Liquor | $700 | |
| | Southern Glacer - Liquor | $300 | |
| | Kloss - Bev (Beer) | $400 | |
| | Lake Shore Bev (Beer) | $200 | |
| | Utility Deposits (None - Paid in Sept 2017) | $0 | |
| | Staples - Office Suppleis | $200 | |
| | Quill - Office Supplies | $400 | |
| | Office Supplies & Stationary , Printing | $150 | |
| | Outside Services - Administrative | $200 | |

| | | |
|---|---:|---:|
| Pro Services Motel Hotel Associates | $1,500 | |
| Pro Services Well Spring Tec | $75 | |
| Pro Service - Peter Comar | $0 | |
| Outside Services -1st Impression - Window | $400 | |
| Maintenance - Mulch T & R Landscaping | $0 | |
| Maintenance - Water Heater Repair | $500 | |
| Home Depot - Hotel Supplies - Ceiling Tiles | $250 | |
| American Fair - Water Resteration (Exterior Wall R | $0 | |
| Hamlin & Assoc Payroll Processing | $320 | |
| A Action Pest Control | $200 | |
| WindStream Phones: Rooms & Admin | $902 | |
| Postage & Guest Shipping | $100 | |
| Repairs & Maintenance  - Parking Lot Lights     & | $100 | |
| Go Flow -  Sales & Marketing | $350 | |
| TA Commission - Booking.Com/Expedia | $600 | |
| TA Commission - Hotel Planner | $800 | |
| Team Members Incentives | $50 | |
| Training | $100 | |
| Uniforms Rooms & Admin | $200 | |
| Visual Matrix | $100 | |
| Dell Business - Computer Rental | $200 | |
| Advanced Waste removal | $800 | |
| Callies - Inventory | $1,500 | |
| RVP Tax Appraisal $6K ($3K March/$3K April) | $0 | |
| Federal Department of Justice - Fee (Unpaid $1,60( | $5,600 | |
| Zion Hotel Motel Tax (July Pymt $15K:  Quarterly - | $0 | |
| State Hotel Motel Tax | $4,000 | |
| State Sales Tax | $1,500 | |
| Peter Comar - 2016 Tax Return $3,500 - 2 installme | $0 | |
| U-Line | $100 | |
| **TOTAL EXPENSES** | **$91,136** | **$0** |
| | | |
| **CASH BALANCE FROM JAN** | **$4,000** | |
| | | |
| **NET INCOME** | **-$4,144** | **$0** |
| | | |
| **CUMMULATIVE NET INCOME** | **-$144** | |
| | -$4,144 | |